## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MANUEL LEDESMA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 24-2243-KHV |
| | ) | |
| UNIFIED GOVERNMENT OF | ) | |
| WYANDOTTE COUNTY/KANSAS CITY, | ) | |
| KANSAS as representative of KANSAS | ) | |
| CITY BOARD OF PUBLIC UTILITIES | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On June 12, 2024, plaintiff filed suit against defendant, alleging race discrimination, retaliation and hostile work environment in violation of 42 U.S.C. § 1981 (Count I), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (Count II). See Complaint (Doc. #1). This matter is before the Court on Defendant's Partial Motion To Dismiss (Doc. #3) filed June 17, 2024. For reasons stated below, the Court sustains defendant's partial motion to dismiss.

## Legal Standard

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing his claims with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court can consider not only the complaint, but exhibits and documents which the complaint attaches and incorporates by reference. Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009).

## Factual Background

Plaintiff's complaint alleges as follows:

Manuel LeDesma was born in 1967 and is a Hispanic American. The Unified Government of Wyandotte County/Kansas City, Kansas is a Kansas governmental entity that acts as

representative of the Kansas City Board of Public Utilities ("BPU"), a public utility that provides electricity and water to customers in Wyandotte County and Johnson County, Kansas.

On February 7, 2002, plaintiff began working for defendant as a Meter Reader.  In 2017, defendant promoted plaintiff to Supervisor of the Water Operations/Water Meters department. Plaintiff has a two-year degree in environmental technology and a Class I Water Certification System Certification.

In 2018, plaintiff applied for the position of Superintendent Operations WO Water Meters/Services.  Defendant did not hire plaintiff for the superintendent position, but instead hired Clifford Robinett, a Caucasian man without the required college degree or water certification for the Water Operations department.  In February of 2019, to fill the role that Robinett left upon becoming superintendent, defendant split his previous supervisor position in two and hired Ryan Duke and Mike Oldehoeft.[1]  Duke and Oldehoeft are both Caucasian.

In April of 2020, a supervisor in the Water Distribution Meter Water Meters/Services department retired.  Plaintiff requested to move into that position.  Defendant informed plaintiff that he could not move unless he assumed the job duties of both supervisory positions—his current position and the vacant position.  Plaintiff declined and remained in his current role.  Defendant hired Duke to fill the vacant position.

In November of 2022, plaintiff participated in a hiring panel for an entry-level position within the Water Department.  After five interviews, the panel selected a candidate to hire.  The Director of Water Distribution, Steve Green, informed the panel that they were to hire a different candidate for the position.  In January of 2023, the panel conducted interviews for another position,

---

[1]     Plaintiff does not allege that he applied or interviewed for the open supervisory position in 2019.

and defendant again instructed them to hire an individual that was not the panel's top choice.

In December of 2022, defendant promoted Robinett to Acting Director. Defendant posted the vacant superintendent position, and plaintiff applied and interviewed. On February 1, 2023, defendant notified plaintiff that he did not get the position because they were "going a different route" and that he did not "do well" in the interview. Complaint (Doc. #1), ¶ 23. Defendant hired Duke to fill the superintendent position.

On April 2, 2023, plaintiff decided to apply for early retirement. Defendant did not ask for plaintiff's input on who would replace him or ask him to be part of the search for his replacement. Defendant did, however, expect plaintiff to train his replacement. After approving his application for retirement, defendant asked plaintiff if he wanted to change locations for the last few weeks of his employment. When plaintiff politely declined, defendant's employee Steve Hargis accused plaintiff of "pouting back in the office." Id., ¶ 25.

On July 20, 2023, plaintiff filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). See Charge Of Discrimination (Doc. #1-1). Plaintiff brought the charge for race, color, national origin and age discrimination and hostile work environment. Id. On March 14, 2024, the EEOC issued plaintiff notice of his right to sue. See Notice Of Right To Sue Letter (Doc. #1-2).

On June 12, 2024, plaintiff filed suit against defendant, alleging that (1) defendant subjected him to a racially hostile work environment; (2) after plaintiff applied for early retirement, defendant retaliated against him; and (3) because of his race and age, defendant did not promote him in 2018, 2019, 2020 and 2023. See Complaint (Doc. #1). On June 17, 2024, defendant filed its partial motion to dismiss. See Partial Motion To Dismiss (Doc. #3).

<u>Analysis</u>

Under Rule 12(b)(6), defendant requests that the Court dismiss part of plaintiff's complaint.  Defendant seeks dismissal of all claims except those for failure to promote in February of 2023, under Section 1981 and the ADEA.  Specifically, defendant asserts that (1) because plaintiff has not alleged that he engaged in protected activity, he has failed to state a claim for retaliation under Section 1981; (2) because plaintiff has not alleged that defendant subjected him to severe or pervasive harassment, he has failed to state a claim for hostile work environment under Section 1981; (3) Section 1981's statute of limitations bars plaintiff's failure to promote claims for conduct which occurred in 2018, 2019 and 2020; (4) plaintiff failed to exhaust administrative remedies on his failure to promote claims under the ADEA for conduct which occurred in 2018, 2019 and 2020; and (5) plaintiff's request for punitive damages fails as a matter of law.

In his response to defendant's motion, plaintiff acknowledges that he is unable to recover punitive damages and clarifies that he no longer intends to seek them.  <u>See Memorandum In Opposition To Defendant's Partial Motion To Dismiss</u> (Doc. #9) filed July 8, 2024.  The Court therefore sustains defendant's motion to dismiss plaintiff's request for punitive damages.

**I.      Whether Plaintiff States A Claim Of Retaliation**

To state a prima facie case of retaliation under Section 1981, plaintiff must allege that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between his protected activity and the adverse employment action.  <u>Davis v. Unified Sch. Dist. 500</u>, 750 F.3d 1168, 1170 (10th Cir. 2014).  To show that he engaged in protected activity, plaintiff need not allege that he reported an actual statutory violation; rather, he must only show a reasonable, good-faith belief that he was opposing discrimination.  <u>Fassbender v. Correct Care Sols., LLC</u>, 890 F.3d 875, 890 (10th Cir. 2018) (defining "protected activity" in

Title VII context).[2]  To show an adverse employment action, plaintiff must allege that he suffered a "significant" harm or change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits.  Muldrow v. City of St. Louis, Mo., 601 U.S. 346, 357 (2024); Ford v. Jackson Nat'l Life Ins. Co., 45 F.4th 1202, 1222 (10th Cir. 2022) (defining "adverse employment action" in Title VII context).

Defendant argues that plaintiff does not allege any facts that he engaged in a protected activity.  The Court agrees.  Plaintiff does not allege that he ever complained of, reported or even discussed discrimination with anyone in the BPU.  Plaintiff asserts that his "protected activity" occurred when he submitted his application for retirement, and that he took this action in protest of defendant's illegal hiring practices.  Plaintiff, however, alleges nothing about his resignation that would indicate opposition to discrimination.  Plaintiff merely alleges that he "decided to submit his application for retirement on April 2, 2023," following defendant's decision not to hire him as superintendent.  Complaint (Doc. #1), ¶ 24.  While defendant's decision not to promote plaintiff may have motivated his application for retirement, plaintiff does not allege facts suggesting that defendant based its decision on his race.  Plaintiff therefore fails to plausibly allege that he was opposing discrimination when he applied for retirement.

Further, plaintiff cites no legal authority that retiring—with no other accompanying conduct—constitutes a protected activity.  Even if this act did constitute a protected activity, the only alleged acts of retaliation are that (1) defendant did not ask for his input in hiring a replacement; (2) defendant expected him to train his replacement; and (3) another employee stated

---

[2]      The test for establishing a prima facie case for retaliation is the same under both Title VII and Section 1981.  Somoza v. Univ. of Denver, 513 F.3d 1206, 1212 (10th Cir. 2008).

that plaintiff was "pouting back in the office."  Id., ¶ 25.   Because adverse employment action requires a significant change in plaintiff's employment status, these three acts do not rise to the level of adverse employment action required to state a prima facie case of retaliation.  Plaintiff therefore has failed to state a prima facie case of retaliation.  Accordingly, the Court sustains defendant's motion to dismiss plaintiff's retaliation claim under Section 1981.

## II.      Whether Plaintiff States A Claim Of Hostile Work Environment

To state a prima facie case of hostile work environment under Section 1981, plaintiff must allege that (1) he is a member of a protected group; (2) defendant subjected him to unwelcome harassment; (3) the harassment was racial or stemmed from racial animus; and (4) the harassment was pervasive or severe enough to alter the terms, conditions or privilege of employment.  Lounds v. Lincare, Inc., 812 F.3d 1208, 1222 (10th Cir. 2015).

To lay the foundation for a hostile work environment claim, plaintiff must allege facts indicating a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Davis v. United States Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998) (quotation omitted).   Courts look to several factors to determine whether a work environment is objectively hostile, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Turnbull v. Topeka State Hosp., 255 F.3d 1238, 1243 (10th Cir. 2001) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993)).

Defendant argues that plaintiff fails to allege any harassment, let alone harassment that was pervasive or severe.  Plaintiff alleges that (1) on four occasions, defendant failed to promote him

to various positions; (2) after he applied for retirement, defendant did not ask for his input in hiring a replacement and expected him to train his replacement; and (3) a co-worker accused him of pouting in his office.

Plaintiff has alleged discrete acts of discrimination which occurred months and/or years apart—not a workplace permeated with discrimination.  Plaintiff does not allege the severity of the harassment, whether defendant's conduct was threatening or intimidating, whether the conduct interfered with his work performance or whether it altered the conditions of his employment. Moreover, even if plaintiff did allege a workplace permeated with discrimination, he has not alleged that this conduct was in any way racially motivated.  Without further factual allegations, plaintiff's conclusory statement that he experienced a hostile work environment fails to state a claim under Section 1981.  The Court therefore sustains defendant's motion to dismiss plaintiff's hostile work environment claim under Section 1981.

## III.    Statute Of Limitations

Plaintiff's remaining claim under Section 1981 is for racial discrimination.  For claims based on acts which occur after the formation of an employment contract, a four-year statute of limitations applies. See 28 U.S.C. § 1658(a); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004).

Under the continuing violation doctrine, plaintiff may still recover "for incidents which occurred outside the statutory time limit if at least one instance of the alleged discriminatory practice occurred within the limitations period and the earlier acts are part of a continuing pattern of discrimination." Zinke v. Slater, 34 F. App'x 667, 671 (10th Cir. 2002).  To allege a continuing violation, plaintiff can allege either "(1) a series of related acts taken against a single individual, one or more of which falls within the limitations period, or (2) the maintenance of a company-

wide policy of discrimination both before and during the limitations period." Id.

This doctrine does not apply to discrete acts of discrimination. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Discrete acts are those that are easily identifiable and individually actionable. Id. Failure to promote is a type of discrete act of discrimination that is only actionable if it occurred within the limitations period. Id. at 115.

Defendant argues that plaintiff cannot assert his Section 1981 failure to promote claims based on conduct which occurred before June 12, 2020, i.e. four years before he filed the complaint in this case. Specifically, defendant argues that out of plaintiff's four claims of discrimination based on failure to promote, only one occurred within the statute of limitations. Defendant therefore seeks dismissal of the three claims which are barred by the statute of limitations.

Plaintiff alleges that (1) in 2018, defendant did not hire him for the Superintendent Operations WO Water Meters/Services position and instead hired Robinett, a Caucasian man without the requisite education; (2) in February of 2019, to fill Robinett's prior position, defendant split the position and hired two Caucasian men: Duke and Oldehoeft; (3) in April of 2020, defendant told plaintiff that he could not move into the Water Distribution Meter Water Meters/Services Supervisor position and ultimately hired Duke for the position; and (4) in February of 2023, defendant again did not hire plaintiff for the Superintendent Operations WO Water Meters/Services position and instead hired Duke.

Plaintiff argues that the continuing violation doctrine applies to this case. Plaintiff asserts that he has alleged (1) an act of discrimination within the limitations period (failure to promote in February of 2023); (2) previous acts of discrimination where defendant routinely gave deference in hiring decisions to younger, Caucasian employees; and (3) that he was not aware of the discriminatory nature of his previous job denials until he participated in the interview panel.

As the Supreme Court and Tenth Circuit have held, each time defendant failed to promote plaintiff constitutes a discrete act of discrimination, which occurred on the day the act happened, thus starting the limitations period.  Morgan, 536 U.S. at 110, 114; Davidson v. Am. Online, Inc., 337 F.3d 1179, 1184 (10th Cir. 2003).  Accordingly, because plaintiff has alleged discrete acts of discrimination, the continuing violation doctrine does not apply to save his time-barred claims.[3] Plaintiff therefore cannot assert claims under Section 1981 based on conduct that occurred before June 12, 2020, i.e. four years before he filed the complaint in this case.

The Court sustains defendant's motion to dismiss based on the statute of limitations for plaintiff's claims relating to conduct that occurred in 2018, 2019 and April of 2020.  Plaintiff's claim for failure to promote in February of 2023 remains.

## IV.    Failure To Exhaust Administrative Remedies Under The ADEA

The ADEA provides that "no civil action may be commenced" in federal court unless plaintiff first files a grievance with the appropriate administrative agency—and does so "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(B).  Claims that fall outside the 300-day window are time-barred.  Morgan, 536 U.S. at 109.  As noted, discrete claims of discrimination occur on the day the act happened, and that act must fall within the 300-day period to be actionable.  Id. at 110, 114.

---

[3]      Plaintiff requests that even if the Court concludes that the continuing violation doctrine does not apply, the Court (1) allow him to still present evidence of the time-barred failure to promote claims at trial as background evidence of discrimination and (2) not strike the time-barred claims from the record.  Memorandum In Opposition (Doc. #9) at 5.

First, at this stage, it is extremely premature to determine what evidence will be presented at trial.  This issue is best left for motions in limine closer to trial.  Second, defendant has not filed a motion to strike time-barred claims from the record.  Plaintiff's concerns about the Court striking the claims from the record are therefore hypothetical.  Should defendant file such a motion, the Court will address it at that time.

Defendant argues that the Court should dismiss three of plaintiff's four failure to promote claims under the ADEA for failure to timely exhaust administrative remedies.   Plaintiff filed his EEOC Charge of Discrimination on July 20, 2023.   Accordingly, the 300-day period expired on September 23, 2022.   Plaintiff alleges, both in his charge and his complaint, that defendant failed to promote him based on his age in 2018, 2019, April of 2020 and February of 2023.[4]  Because three of plaintiff's four claims occurred before September 23, 2022, the Court sustains defendant's motion to dismiss those claims as untimely.

Plaintiff's discrimination claim under the ADEA based on failure to promote in February of 2023 remains.

**IT IS THEREFORE ORDERED** that Defendant's Partial Motion To Dismiss (Doc. #3) filed June 17, 2024 is **SUSTAINED.**

Dated this 24th day of September, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[4]    Plaintiff again asserts that the continuing violation doctrine saves his ADEA claims. Because plaintiff relies on the same discrete acts of discrimination, this doctrine does not apply.